FILED
DEC 29 2006
DEC 29 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY RADZIEWICZ and SUSAN RADZIEWICZ, | ) ) ) **06CV7182** |
| Plaintiffs, | ) **JUDGE FILIP** ) |
| v. | ) **MAG. JUDGE ASHMAN** ) |
| TRIAD FINANCIAL CORP., DIVERSIFIED ASSET RECOVERY, INC. and TODD OSINSKI, | ) ) ) JURY DEMANDED |
| Defendants. | ) ) |

## COMPLAINT

### *Jurisdiction and Venue*

1. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Bankruptcy Code, 11 U.S.C. § 362 *et seq.* Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district since Defendants can be found, have agents, and transact business in this district.

### *Parties*

3. Jeffrey Radziewicz and Susan Radziewicz are citizens of the State of Illinois who reside within this district.

4. Defendant Triad Financial Corp. (hereinafter "Triad") is a California corporation doing business in this district. Defendant engages, *inter alia*, in the financing of motor vehicles to

the public and, on information and belief, hired Diversified Asset Recovery, Inc. and Todd Osinski to effectuate the repossession of the Plaintiffs' vehicle.

5. Defendant Todd Osinski is an individual engaged in the business of motor vehicle repossession in this district with a last known address registered at 21951 W. Kettering Ct., Plainfield, Illinois 60544.

6. On information and belief, Osinski is an agent and/or owner of repossession agency Defendant Diversified Asset Recovery, Inc., a corporation formerly registered to do business in the State of Illinois.

### *Factual Allegations*

7. On or about June 10, 2003, Plaintiff Susan Radziewicz purchased a 2001 Dodge Durango from an automobile dealership and executed a retail installment contract.

8. Defendant Triad accepted assignment of the Durango contract and provided financing for the purchase.

9. In return, Triad purported to take a security interest in the vehicle.

10. After financial difficulties arose, Susan Radziewicz and her husband Jeff sought protection and relied under a Chapter 13 bankruptcy plan on or about October 6, 2005.

11. Triad Financial was listed as a creditor on the Radziewiczs' Chapter 13 filing.

12. On or about December 26, 2005, in response to the Plaintiffs' bankruptcy petition, Triad filed an "Objection to Confirmation of Chapter 13 Plan."

13. Despite Triad Financial's actual knowledge of the Radziewiczs' Chapter 13 and the attendant automatic stay, on or before December 30, 2005, Triad hired a repossession agent to engage in the "self-help" repossession of the Durango.

14. Plaintiffs believe that Triad hired Defendants Diversified Asset Recovery, Inc. and/or repossession agent Osinski to effectuate the repossession.

15. Plaintiffs believe that Triad sent an order for repossession on the Plaintiffs' vehicle to its agent, despite actual knowledge of the Plaintiffs' bankruptcy and in violation of the automatic stay.

16. On or about the late evening of December 30, 2005, Triad's repossession agent, Defendant Osinski, drove to Plaintiffs' Plainfield home and parked his vehicle in Plaintiffs' driveway.

17. At the time, the Plaintiffs did not know Osinski or his purpose.

18. When Jeff Radziewicz opened his front door to inquire as to Osinski's business there, Osinski asked for Susan Radziewicz.

19. Jeff Radziewicz advised Osinski that his wife was upstairs with their daughter and asked if he could help.

20. Osinski repeated that he was there because he "needed to speak to Susan," and further stated, "I need you to get Susan – I am here to pick up the car."

21. Osinski next stated, "I am here to pick up the Durango and I have paperwork."

22. Jeff Radziewicz explained that he and his wife had filed for protection from the bankruptcy court and explained that he was informed they were protected by an automatic stay. Jeff Radziewicz then asked Osinski to leave.

23. Rather than leave as Jeff Radziewicz requested, Osinski persisted, said that he had paperwork authorizing him to take the vehicle and said that Mr. Radziewicz and his wife were in violation of a new "financial crimes law that just went on the books" that had to do with the concealment of collateral.

24. Once again, Jeff Radziewicz asked Osinski to leave.

25. Osinski then stated that if Jeff Radziewicz did not open the garage, he and his wife would be arrested for financial crimes.

26. Osinksi was carrying a clipboard which Jeff Radziewicz assumed contained the paperwork Osinski had referred to.

27. When Jeff Radziewicz asked if he could see the paperwork and held out his hand, Osinski struck him with the clipboard and stated that he did not have to show anyone anything.

28. Jeff Radziewicz stated that if Osinski did not leave his property, he was going to call the police.

29. Once again, Osinski refused to leave and refused to remove his vehicle from Plaintiffs' driveway.

30. Jeff Radziewicz called the Plainfield Police Department.

31. Around the time Jeff Radziewicz called the police, Susan Radziewicz, who was pregnant, and her son joined Jeff downstairs. They had heard the commotion with Osinski, and were listening from the upstairs hallway, frightened as to what was going on. In fact, the Radziewiczs' son had two friends over who were also present in the hallway.

32. When the police arrived, Jeff Radziewicz told his wife and son to stay in the house.

33. When Jeff Radziewicz stepped outside, he asked Officer Miller to remove Osinski from his property.

34. Officer Miller went to speak with Osinski and the police spent several minutes speaking with Osinski by themselves.

35. Upon returning, Officer Miller told Jeff Radziewicz that Jeff should just let Osinski "do his job."

36. When Jeff Radziewicz explained that he and his wife were protected by the bankruptcy, Officer Miller responded by saying that Osinski had told him that Jeff Radziewicz was breaking the law and should be arrested.

37. Around this time, a second Plainfield police cruiser appeared and Officer Van Heeswick arrived on the scene.

38. Officer Van Heeswick spoke alone with Osinski.

39. Susan Radziewicz was watching events unfold from the doorway of their home.

40. After a few minutes, Officers Miller and Van Heeswick finished their conversation with Osinski and re-approached Jeff Radziewicz.

41. Officers Miller and Van Heeswick then told Radziewicz to put his hands behind his back because he was under arrest.

42. When Radziewicz asked what he was being arrested for, the officers explained that Osinski had accused Radziewicz of battery and shown them evidence of a red welt.

43. Radziewicz explained that he was the one who had been hit and had been the one to call the police.

44. The officers disagreed with Jeff Radziewicz, having been convinced by Osinski that Radziewicz was the one causing trouble.

45. Seeing the arrest, the Radziewiczs' son came out, trying to explain that Osinski had been the one to commit a battery and that his father had not done anything wrong.

46. The officers told Jeff Radziewicz that if he opened the garage and let Osinski take the vehicle, they might be able to get Osinski to drop the charges.

47. Jeff Radziewicz did not agree to open the garage so he was handcuffed and taken in the squad car to the police station based upon Osinski's complaint.

48. At the station, Radziewicz was photographed and finger-printed.

49. He was later released on bond after Susan Radziewicz drove down to the station to pay bail.

50. The Radziewiczs were so traumatized by the ordeal that they installed security cameras to monitor the front of their home.

51. In connection with his arrest, Jeff Radziewicz was ordered to appear in court on February 3, 2006.

52. The hearing was public and held at the Plainfield Village Hall.

53. Jeff Radziewicz pleaded not guilty and the matter was set for a bench trial on March 3, 2006.

54. Jeff Radziewicz hired an attorney to represent him at the trial and paid a retainer for the attorney's legal services.

55. On the day of trial, Osinski, the Village's complaining witness, failed to appear and the case was dismissed.

56. A few months later, Jeff Radziewicz received a notice that his case was set for another trial.

57. Jeff Radziewicz's attorney spoke to the attorney for the Village and explained that a background check on Osinski revealed that Osinski had been convicted on multiple counts of felony identity theft.

58. Then, at the June 2, 2006 court date, the Village's attorney advised Jeff Radziewicz that "this was all a big mistake," and that she was sorry for the inconvenience.

59. Soon after, Susan Radziewicz, scared and worried that the police and more repossession agents would return to her home, called Triad and stated she wanted to voluntarily surrender the vehicle.

60. On or about June 9, 2006, Susan Radziewicz made arrangements with Triad and Triad picked up the car at a local parking lot.

61. Triad sent a form "Notice of Our Plan to Sell Property" and "Affidavit of Defense" to Susan Radziewicz with a printed "Mailing Date" of June 14, 2006.

62. The postmarked envelope indicates Triad's actual mailing date was June 15, 2006.

63. The Radziewiczs received Triad's "Notice of Our Plan to Sell Property" and "Affidavit of Defense" on or about June 28, 2006. *See* Exhibit A.

64. Triad's "Notice of Our Plan to Sell Property" advised that Susan Radziewicz had the right to reinstate the contract for a total amount of $640.00 in "repossession costs & fees."

65. However, when Susan Radziewicz called to ask about the details of reinstatement, Triad stated that she was not eligible for reinstatement.

66. On or about August 1, 2006, Triad told Susan Radziewicz that she owed a "payoff balance" of $12,660.72.

### COUNT I
### *Violations of the Fair Debt Collection Practices Act*
### *Against Diversified Asset Recovery, Inc. and Todd Osinski*

67. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

68. Defendants Diversified Asset Recovery, Inc. and Todd Osinski are subject to liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6), ("FDCPA"), for their efforts to take the Plaintiffs' vehicle through nonjudicial means..

69. Plaintiffs are "consumers," as that term is defined by the FDPCA, 15 U.S.C. § 1692a(3).

70. In the course of seeking to enforce Triad's purported security interest in the Radziewicz vehicle, Diversified Asset Recovery, Inc. and Todd Osinski's repossession efforts violated the FDCPA.

71. Defendants attempted to repossess the vehicle by trickery and deceit by unlawfully threatening arrest, falsely representing that the Radziewiczs were committing a crime by not surrendering the vehicle, and illegally committing the torts of trespass and battery.

72. This conduct was an unfair means to collect a debt, in violation of 15 U.S.C. § 1692f(6), as there was no present right to possession of the vehicle because the repossession could not be completed without breaching the peace and because further repossession efforts violated the automatic bankruptcy stay.

73. Plaintiffs suffered actual damage, including fear, humiliation, stress, frustration, and aggravation, as a result of Defendants' unfair repossession tactics. Moreover, Jeff Radziewicz was arrested and had to retain counsel and appear in court as a result of Osinski's misrepresentations to Plainfield police.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants Diversified Asset Recovery, Inc. and Todd Osinski and award:

    (A) Actual damages in an amount to be proven at trial;

    (B) Statutory damages as provided by 15 U.S.C. § 1692k;

    (C) Reasonable attorneys' fees and costs; and

    (D) Any other relief the Court deems just and appropriate.

## **COUNT II**
### *Violations of 810 ILCS 5/9-609 Against Triad Financial Corp.*

74. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

75. Triad retained a security interest in the 2001 Dodge Durango after Susan Radziewicz's execution of the retail installment contract.

76. On information and belief, or before December 30, 2005, Triad retained Defendants Diversified Asset Recovery, Inc. and Todd Osinski to effectuate the non-judicial repossession of the vehicle.

77. 810 ILCS 5/9-609(b)(2) provides that a secured party may proceed in taking possession of the collateral "without judicial process, if it proceeds without breach of the peace."

78. On or about December 30, 2005, Triad's agents Diversified Asset Recovery, Inc. and Todd Osinski breached the peace in their efforts to repossess the vehicle.

79. Osinski struck Jeff Radziewicz's hand (which equates to a battery, as set forth below) and lied to Plainfield police officers in order to orchestrate the arrest of Radziewicz.

80. Osinksi ignored Jeff Radziewicz's repeated requests to leave his property and blocked the Plaintiffs' driveway with his own vehicle.

81. Osinski also misrepresented that Jeff Radziewicz and his wife were committing a crime and would be arrested for "financial crimes."

82. Because Defendants had no right to arrest the Plaintiffs, the threat of arrest constituted an assault – a threat to commit unwanted physical contact or injury with an apparent ability to do so.

83. Osinksi's commission of the tort of battery, combined with the above threats, constituted a breach of the peace.

84. Triad is liable in damages to Plaintiffs, for its agents' failure to comply with § 9-609, under 810 ILCS 5/9-625.

85. Plaintiffs' damages include, but are not limited to, out of pocket expenses associated with Jeff Radziewicz's arrest and court appearances and the fear, stress, humiliation, and embarrassment of the repossession attempt.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant Triad Financial Corp., and award:

    (A)    Actual damages in an amount to be proven at trial, not less than the credit service charge plus 10% of the principal amount of the obligation, plus costs and interest; and

    (B)    Any other relief the Court deems just and appropriate.

### COUNT III
### *Willful Violations of the Bankruptcy Code*
### *Against all Defendants*

86. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

87. In October of 2005, Plaintiffs filed a Chapter 13 bankruptcy.

88. Triad received notice of the Plaintiffs' bankruptcy filing.

89. On or about December 26, 2005, Triad, through its attorney Kenneth B. Drost, filed a notice of objection to confirmation of the Plaintiffs' Chapter 13 plan.

90. However, despite knowledge of the Plaintiffs' bankruptcy petition, Triad authorized the nonjudicial repossession of the subject vehicle.

91. On or about December 30, 2005, Triad's repossession agent attempted to repossess the subject vehicle.

92. On or about December 30, 2005, Jeff Radziewicz advised Triad's repossession agent that he had filed bankruptcy.

93. The filing of a bankruptcy petition operates as an automatic stay of any action or proceeding against the debtor. The stay operates as an injunction and remains in effect until a bankruptcy discharge is granted or denied. *See* 11 U.S.C. § 362 *et seq.*

94. The stay is designed to effect orderly administration of the debtor's estate, protect creditors' rights, maintain the status quo, and prevent harassment and coercion of the debtor.

95. Defendants' willful violation of the automatic stay caused the Plaintiffs' to suffer actual damages, including but not limited to, the out of pocket expenses associated with Jeff Radziewicz's arrest and the fear, embarrassment, and stress caused by the events of December 30, 2006.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants Triad Financial Corp., Diversified Asset Recovery, Inc. and Todd Osinski, jointly and severally, and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages;

    (C)    Reasonable attorneys' fees and costs; and

    (D)    Any other relief the Court deems just and appropriate.

## COUNT IV
### *Violations of the Illinois Consumer Fraud Act*
### *Against All Defendants*

96. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

97. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, ("ICFA"), prohibits, *inter alia*, deceptive and unfair conduct, representations, and omissions.

98. Defendants, through the conduct of repossession agents Diversified Asset Recovery, Inc. and Todd Osinski, committed deceptive and unfair acts on or about December 30, 2005.

99. Defendants violated the ICFA by, among other things: (1) representing that Plaintiffs would be committing a crime and arrested if they did not surrender the subject vehicle; (2) misrepresenting the facts and circumstances of the repossession attempt to Plainfield police officers; and (3) ignoring the automatic bankruptcy stay and representing that such stay did not matter.

100. Triad also violated the ICFA by virtue of representations made regarding the Plaintiffs' rights to reinstate their vehicle contract.

101. After Plaintiffs' fear of additional harassing conduct caused them to voluntarily surrender the subject vehicle on or about June 9, 2006, Triad sent the Radziewiczs a form "Notice of Our Plan to Sell Property" and "Affidavit of Defense." *See* Exhibit A.

102. Triad's "Notice of Our Plan to Sell Property" advised that Susan Radziewicz had the right to reinstate the contract for a total amount of $640.00 in "repossession costs & fees."

103. However, when Susan Radziewicz called to ask about the details of reinstatement, Triad stated that she was not eligible for reinstatement.

104. Either Triad's "Notice of Our Plan to Sell Property" or Triad's oral representations were false and deceptive and in violation of the ICFA.

105. Defendants intended for Plaintiffs to rely on the foregoing false and deceptive representations and actions.

106. The foregoing representations and actions were made in the course of Illinois trade and commerce.

107. As a proximate result of the foregoing representations and actions, Plaintiffs suffered economic and emotional damages. Plaintiffs also suffered lost use of the vehicle as a result of Triad's misrepresentations as to their right to reinstate.

108. Defendants acted willfully, recklessly, maliciously, and with intent to injure Plaintiffs.

109. By virtue of Triad's security interest in the vehicle, it is responsible for the unlawful conduct of its repossession agents, as explained by Official Comment 3 to § 9-609 of the Uniform Commercial Code.

110. Further, Triad was negligent in the selection, instruction, supervision, and retention of its repossession agents and therefore, can be held liable for its agents' unlawful acts.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants Triad Financial Corp., Diversified Asset Recovery, Inc. and Todd Osinski, jointly and severally, and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages;

    (C)    Reasonable attorneys' fees and costs; and

    (D)    Any other relief this Court deems just and appropriate.

## COUNT V
### *Claim for Battery Against All Defendants*

111.  Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

112.  On or about December 30, 2005, Todd Osinski intended to strike and in fact did strike Jeff Radziewicz's person in the course of trying to repossess the subject vehicle.

113.  Osinski's unwanted offensive conduct resulted in physical harm to Jeff Radziewicz and caused Susan Radziewicz and their children distress and fear witnessing the incident.

114.  By virtue of Triad's security interest in the vehicle, it is responsible for the unlawful conduct of its repossession agents, as explained by Official Comment 3 to § 9-609 of the Uniform Commercial Code.

115.  Further, Triad was negligent in the selection, instruction, supervision, and retention of its repossession agents and therefore, can be held liable for its agents' unlawful acts.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants Triad Financial Corp., Diversified Asset Recovery, Inc. and Todd Osinski, jointly and severally, and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages; and

    (C)    Any other relief this Court deems just and appropriate.

## COUNT VI
### *Claim for Trespass Against All Defendants*

116.  Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

117. On or about December 30, 2005, Diversified Asset Recovery, Inc. and Todd Osinski entered onto Plaintiffs' private property to effectuate the repossession of the vehicle.

118. Defendants engaged in the intentional wrongful interference with Plaintiffs' private property by coming to their doorstep and threatening Plaintiffs with arrest for the commission of financial crimes.

119. After Jeff Radziewicz advised Defendants that he and his wife had filed for bankruptcy and repeatedly requested that Osinski leave his private property, Defendants' refusal to leave constituted an illegal trespass.

120. Defendants' conduct in blocking access to Plaintiffs' driveway with Osinski's vehicle was also an unlawful trespass.

121. Defendants' trespass caused Plaintiffs and their children distress and fear witnessing the incident.

122. By virtue of Triad's security interest in the vehicle, it is responsible for the unlawful conduct of its repossession agents, as explained by Official Comment 3 to § 9-609 of the Uniform Commercial Code.

123. Further, Triad was negligent in the selection, instruction, supervision, and retention of its repossession agents and therefore, can be held liable for its agents' unlawful acts.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants Triad Financial Corp., Diversified Asset Recovery, Inc. and Todd Osinski, jointly and severally, and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages; and

    (C)    Any other relief this Court deems just and appropriate.

## COUNT VII
### *Negligent Retention and Hiring Against Triad Financial Corp.*

124. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-66 as if set forth fully in this Count.

125. Triad hired a repossession agency that, on information and belief, was managed and/or owned by Todd Osinski sometime before December 30, 2005.

126. In August of 2005, Osinski pleaded guilty to the crime of "financial identity theft," a felony.

127. Triad engaged the services of Osinski's corporation to effectuate non-judicial repossessions and as such, should have and/or was required to ensure that its repossession agent would comply with the law.

128. Triad's failure to conduct an investigation into the background of its agent was negligent and/or reckless.

129. Alternatively, Triad investigated and wrongly decided to ignore the results of its investigation.

130. Triad knew or should have known that its repossession agent was unfit for the job and moreover, that its agents' unfitness would pose a foreseeable danger to others.

131. The potential for violence in the course of a self-help repossession is also reasonably foreseeable.

132. In this case, Osinski's unfitness for his job proximately caused Plaintiffs harm.

133. Plaintiffs were economically and emotionally damaged as a result of Triad's negligence in that the repossession agent committed a battery, falsely threatened criminal prosecution, and orchestrated the arrest of Jeff Radziewicz.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendant Triad Financial Corp. and award:

    (A)    Damages in an amount to be proven at trial; and

    (B)    Any other relief this Court deems just and appropriate.

**Plaintiffs request a trial by Jury**

Respectfully submitted,

By: _____
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
(312) 782-5808

Jonathan Nachsin
Jonathan Nachsin, P.C.
105 West Adams Street, Suite 3000
Chicago, IL 60603
(312) 327-1777

# EXHIBIT A

| | DATE OF NOTICE | DATE OF REPOSSESSION |
|---|---|---|
| | 06/14/2006 | 06/09/2006 |
| **TRIAD FINANCIAL CORPORATION** | Loan Number | Date of Contract |
| P.O. Box 3299 | 40900150702890001 | 06/10/2003 |
| ATTN: Reinstatement Dept. | Buyer | Co-Buyer and/or Guarantor |
| Huntington Beach, CA 92605-3299 | SUSAN A RADZIEWICZ | |
| Phone: (800)587-4230 ext 41079 | **DESCRIPTION OF VEHICLE** | | | |
| Fax : (714)892-8990 | | Year | Make | Model |
| | ☐ New | | | |
| | ☒ Used | 2001 | DODGE MP | DURANGO |
| To: SUSAN A RADZIEWICZ | Vehicle Identification Number: | | | |
| 13005 S DENISE ST | 1B4HS28Z51F540029 | | | |
| PLAINFIELD, IL 60544 | | | | |

## NOTICE OF OUR PLAN TO SELL PROPERTY

Your vehicle was repossessed on 6/9/2006 for failure to make payments on your account.

**Private Sale:**
We will sell the vehicle described above at private sale sometime after **21 days** from the date of this Notice.
The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

How to get the vehicle back:

You have the right to "REDEEM" the Vehicle at any time up until we sell the Vehicle by paying to Triad Financial Corporation at the address shown at the top of this Notice, the Total Outstanding Due (not just the past due payments), shown below in the Redemption section.

You can restore the contract and pay future monthly payments as they become due. This is called your right to "REINSTATE". You may reinstate your contract by paying the Total Amount Now Due within **21 days** from the date of this notice.

### TO REDEEM

You have the right to redeem the Vehicle at any time up until we sell the Vehicle by paying to Triad Financial Corporation, at the address above, the Total Outstanding Due (not just the past due payments).

| Contract Balance | | $18,618.47 |
|---|---|---|
| Delinquent Charges | + | $0.00 |
| Collection costs & fees | + | $0.00 |
| Repossession costs & fees | + | $640.00 |
| Less unearned finance charge | - | $0.00 |
| **Total Outstanding Due** | | **$19,258.47** |

### TO REINSTATE

You have the right to reinstate the contract and get back the Vehicle. To reinstate, you must pay the Total Amount Now Due within **21 days** of the date of this Notice. Your payment must be made to Traid Financial Corporation at the address shown at the top of this notice.

| Past Due Payment | | $0.00 |
|---|---|---|
| Delinquent Charges | + | $0.00 |
| Collection costs & fees | + | $0.00 |
| Repossession costs & fees | + | $640.00 |
| **Total Amount Now Due** | | **$640.00** |

You must also pay any payment that comes due within the reinstatement period.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at the telephone number shown at the top of this Notice, or you may write to us at the address shown at the top of this Notice and request a written explanation.

If you need more information about the sale call us at the telephone number listed above or write us at the address listed above.

We are sending this notice to the following other people who have an interest in the property above or who owe money under your agreement:

--

Triad Financial Corporation intends to dispose of the vehicle upon expiration of **21 days** from the date of this Notice.

**INSURANCE RIGHTS:** If you do not want to get your vehicle back, call the insurance company to ensure that any liability insurance has been cancelled. You may have a right to get credit for all premium refunds.

If you have filed bankruptcy, this notice is not an attempt to collect a debt, but is for your information only. We may enforce our lien against any property that you gave as collateral for this debt. If this debt has been discharged, you are not personally liable for payment unless you reaffirmed such debt in your bankruptcy.

